May it please the court and counsel, my name is Richard Tewling. I represent the appellant, Egglestons. I'd like to reserve five minutes. Were you here when I explained all of that? I was, Your Honor. Okay, so you've got to take full advantage yourself of looking at the time. Okay. The good clerk will give you a yellow ride at the appropriate time. Your Honor, the Egglestons are asking this court, the Ninth Circuit, to adopt, as a matter of first impression, as law in this district, the Restatement of Tort Second, Section 577, third sentence of Comment E. And in talking about a defamation made to an agent of the person who's claiming to be defamed, that restatement says, a third sentence, so too, the communication to a servant or agent of the person defamed is published. Now it goes on, there's a proviso. But we start with the plaintiff's statement. Well, if you don't want to read the proviso, go ahead. I'm going to. I'm just pausing there for a second. So it starts with the statement that the publication to the agent is a defamation. Then it finds an exception. And it says, although if the communication is an answer to a letter or a request from the other or his agent, then the publication may not, doesn't say shall not, it may not be actionable. So we've got a may in there. Then you turn to Section 584, and the restatement gives some clarification. And it gives further emphasis to the fact that a defamation communicated to an agent is a publication. Section 584 says, an honest inquiry or investigation by the person defamed to ascertain, you know, whether he's been defamed, to ascertain the existence, source, content, meaning of a defamatory publication. It's not a defense. It's not a defense to an action for republication. And that's what we've got here. Is this what you call the good faith exception? That's what two cases call the good faith exception. This is basically, so this is what you're talking about? Yes. But I'm disagreeing. Where did you make this argument in the trial court? Your Honors, before the trial court was this whole issue of publication. Where did you make this argument to the trial court? The most that can be said is the Egglestons did not raise the good faith exception. But, Your Honors, the court did. So you never, you come to us and you open your argument with a legal proposition that you did not rely on in the trial court. We relied on. Is that right? We didn't rely on. Is that right? We did not rely on the good faith exception. Everything you just said, you didn't rely on in the trial court. No, I disagree with that. We relied on the fact that there was a publication to an agent. But the theory that you're relying on, you didn't use that theory. We did not use the good faith exception. Now, so ordinarily, we don't hear issues for the first time on appeal. You know, the court, the system is not a degenerative disease where you get do-overs all the time. It takes too long and costs too much as it is. And as a matter of fact, what you're referring to is a footnote by the trial court, and the court says you didn't raise it. Your Honor. And you're asking us now to start over again with a new theory. I'm asking you, I have two different responses to that, Your Honor. First, all four cases the judge used go to this issue of publication to an agent. Yeah, but you didn't use it. We didn't use it, but the judge did in his decision and based his decision on that law, Your Honor. The judge was just almost like trying to gesture a goodwill to save you from yourself. I don't look at it that way. Also, Your Honor, I submit to this court that this is an issue of first impression. It's also an issue of fact. And the record is developed for this court to look at. Again, why didn't you say in your brief that it's not? I don't think we said it in that context. You didn't say it in that context? No. The district court erred in granting summary judgment because substantial circumstantial evidence exists from which the jury could infer Dr. Flint published defamatory statements. That's a different issue. That's the issue of can you use circumstantial evidence to prove a defamation? Your Honor, this court, the Ninth Circuit, is willing, with discretion, to look, if you want to consider it an issue of first graze, it's willing to look at an issue of first graze when it's purely a question of law. And this issue has not been decided in this circuit. The only circuit we find a decision on this issue is the Fifth Circuit back, I think, in 1952. This is a state law question, right? The Ninth Circuit would have to look at state law. It's a state law question. Right. And there is no state law. It's irrelevant what we have to say. They don't have to pay attention to us. But it's a state law question and certainly hasn't been developed in Idaho. Has not. Nor in, well, the reason I point to the Ninth Circuit is because the Ninth Circuit says if the state law is not developed, you know, we'll look to our law for guidance. And there is no guidance in state law or in the Ninth Circuit. Why didn't you rely on it to begin with? Didn't find it. Why didn't you mention it before your reply brief on motion for reconsideration? Because we were looking. I mean, it was in the court's decision. It was sitting right there in his footnote. And you didn't even open up your motion for reconsideration with it so that we would have it, therefore, in front of the judge. It didn't come until the reply brief. Well, under reconsideration, we looked at the basis and the rules for reconsideration and didn't think we could argue it there in that way. But it was okay for the reply. And it's okay here? It's okay here. You know, Your Honors, when you've got an issue of first impression, sometimes it takes a while for the razor's edge to come to the surface. And this is an important issue. I think there's an injustice if this case doesn't get to trial. And the court has discretion to look at it, particularly when it's an issue of first impression, when it's a question purely of law, and when the record, on some of the judges who haven't had a trial yet, but the record is developed enough with these facts, with the pertinent facts about the publication to agents, for the court to look purely at the record and make a pure decision of law. On the other hand, the other side defended the case as you brought it to the court, spent considerable time, effort, energy, and resources in defending the case, wins, and now you want to start over. This is not a case, Your Honor, that went all the way through trial with great expense. We're early on in the case. When did the case start? I'd have to look at our complaint. I believe in March a year ago. I don't want to guess at it. Well, that's okay. Don't take that part. Let me ask you another question. If I can consider this for the first time on appeal, I have to meet one of three exceptions. It seems to me that there's no change in the law, so it isn't a second exception. It isn't one purely of law, because even you're arguing there's a question of fact as to whether this is a good faith situation. So we've got to find it under miscarriage of justice. What in their records would say to me this is a miscarriage of justice? I'll answer that question, and I'd like to make sure I go back to point number two. Your Honor, think about slander for a minute. You know, libel at least leaves a record behind, but it's particularly insidious when somebody is slandering you behind a closed door, no one else can hear it but the one person you're belittling, you're damaging somebody, you're hurting their reputation. It's hurtful. It's unjust. Then how do you ever find that? The person that's doing the defaming doesn't raise a red flag and say you all come and watch me. By having the unnamed patient come to court. Well, the unnamed patient, under HIPAA law, we cannot even mention the unnamed patient's name. So the unnamed patient gave us the good faith basis to investigate this by sending in investigators. Otherwise, how else are you going to find out? How else are you going to prove what's going on behind a closed door? Those words just evaporate. There's no record. Well, you know, taking it a step farther, you've got an interesting chain of information here. You've got A tells B tells C tells D. I mean, first year law students take a look at that and hearsay with a capital hearsay pops up. There's no, we're not claiming that we're using. Even if it's not for the truth of the matter asserted, it becomes so unreliable after four chains that it should be admitted as evidence, period. Your Honor, Melanie Eggleston is the witness in the case. She's the one that heard it from the unnamed patient. Who did the unnamed patient hear it from? What? From Dr. Clement. And who did Melanie tell? Mark. Her husband, Mark. So we've got double hearsay. Well, you've got Melanie. You have double hearsay. And then also you've got Mark. So it's another double hearsay. Well, let me ask you a question. But the point is, I want to say it's not hearsay because the statement from the unnamed patient could have turned out to be totally false. The investigators go in there and Dr. Clement says no such thing. So why is it admissible? You know, it doesn't even have to come. The question is when one of the doctors is on the stand, what caused you to send an investigator in in the first place? What gave you a good faith reason to do that? Did that happen in this trial? I mean, was there anything in the record on that? Yes. The record says that the reason the investigators went to see Dr. Clement is because of what Melanie and Dr. Eggleston heard from this unnamed patient. So it's not there for the truth of the matter. It's just there to give them notice and warning. Something's going on in this community. And wasn't this really an issue of abuse of discretion in the district court, whether they should admit this? Yes. The motion to strike was an abuse of discretion. And with one person telling another person who tells another person who then puts it in their affidavit to be considered on summary judgment, you're suggesting that that was an abuse of discretion for the district judge? I am. But, Your Honor, when you say it that way, bear in mind we're not talking about hearsay. The only question is did the Egglestons have a good faith basis? That's the only question. Did they have a good faith basis to pursue an investigation? That assumes you have the good faith issue preserved. Yes. If you don't have it preserved, then this is irrelevant. Well, I go back to the original statement that under the restatement, which is the proper law, I submit, if Idaho had developed it, the defamation, the communication to the agent is a defamation. If we agree with you and send this back with flags flying in your favor, tell me how you put your case on and prove your claims. We have the three agents to whom the defamation was communicated. They all testify. They all testify. And what are the instructions given with respect to the truth of the matter of what they have to say is? Then that's why we spend so much time in the circumstantial evidence issue is, you know, circumstantial evidence instruction to the jury, and can the jury infer that if Dr. Klem said this three times over a period of, I think, 14 or 18 months Somebody else must have said it. Somebody else must have said it. Okay, so you're asking a jury to infer from this that somebody else must have said it. Over and over again. Who? Well, if Dr. Klem says this to three people at three different occasions, three random people that he thinks are patients, isn't it logical for the jury to assume that he'd say it to three or a dozen other people? But then you get to your question of what impact did it have on the Egglestons. And it's unlike the case where the business just completely fell apart. Here, there are all kinds of other reasons that are in the record. Why business may have, offices were closed. Doctors stopped doing certain kinds of operations. Advertising fell off. So there are all kinds of other reasons that might explain the diminution in the business. Judge Trott, the record, the issue of damages is not before the court. The record is entirely undeveloped in that area. I know, but you're telling us about this miscarriage of justice. So, atmospherically, I've got to look at the whole case and see if there's a miscarriage of justice. Well, even if there wasn't a dollar's worth of pecuniary damage, when your livelihood is as a surgeon and you're defamed, that's a terrible thing. In your own community, in a small town, there are damages. When it's defamation per se. I have a tough time with your argument only because I couldn't find the case law which would suggest that the mere committing of any instance, besides, I guess, something as bad as murder or something like that, arises to the miscarriage of justice. It's only what is the circumstance or what are the consequence of these. Therefore, we have to look at that in order to find the miscarriage of justice. Not only do we have to do that, but if I exclude this other statement and any of these statements, then I have to say what other evidence is there circumstantially to suggest that these statements were ever published. Those are all made on the consequences. Otherwise, I've got no evidence. Well, if we adopt the restatement, then the publications to the agents are defamation. Right there. You don't have to go any further. You want to reserve? I guess you got nothing to reserve. I've got 11 seconds. Thank you. May it please the court, counsel. My name is Jonathan Howley and I represent the Clemson Cleft Montometry in this case. I think the court really hit the nail on the head when they first focused on whether or not this evidence is hearsay. Because the good faith exception fails for two different reasons. One, they did not raise it in the court below. And the exception, the narrow exception that allows for them to raise it for the first time on appeal is not satisfied because, one, it's not a pure question of law. It necessarily requires a question of fact, whether or not there's an honest belief that somebody was defamed to allow them to send somebody up to investigate. Two, there's no miscarriage of justice. What was argued in the brief was that there's a miscarriage of justice because the Egglestons over a two-year period result in a continued loss of business. As the court had identified in his decision, as far as the damages, there were multiple reasons to explain a loss of damages, including the doctor. A loss of business. A loss of business. One of those is that Dr. Richard Eggleston had quit doing most of his surgeries. They had, even prior to the alleged defamation that occurred, they had closed down two of their different satellite offices. They reduced their advertising. Also, they were having problems with securing the receivables. That can be miscarriage of justice. I would submit that a miscarriage of justice would occur if the court allowed them to argue first on appeal. What we have here is an entire reliance on a good faith argument, good faith exception. It's this unknown, unnamed patient that the clients have no ability to determine whether or not this person even exists or what they said. It's very suspect in nature. If you look at the facts, that this unnamed patient happened to go to Melanie Eggleston, the wife of the plaintiff, Mark Eggleston, and happened to make a statement to her. In addition to that, you have in the record Dr. Richard Eggleston referring to this unnamed patient as a female. Dr. Mark Eggleston refers to it as a male. Was there discovery in this case? There was discovery in this case. Did you try and find out their names? Yes, I did. What happened? They objected to it and identified that they cannot identify the name of this patient because of HIPAA regulations. Because of what? HIPAA regulations that they can't identify. We're left to just have to agree that this unnamed, unknown mystery patient exists and that they said things. If an unnamed patient puts in an affidavit, you're entitled to pose that person, cross-examine that person, but here it's very interesting because you can't do it. They put it in by a second person representation. Exactly. It puts you in a terrible situation. It would create a miscarriage of justice. They identified that they could rely upon Melanie Eggleston's statements, what this person stated. First, that would also be classic hearsay. Here we have double hearsay. That would still be classic hearsay, what this person said. I don't see it as hearsay if he has the opportunity to get the good faith issue in because then he needs to show his good faith and it's what he heard that would be relevant to that issue. So your argument depends upon good faith not being before us because it was not properly raised. Not necessarily, no. I would have to disagree with that because the record before the court for summary judgment only allows for misleadance. Had they submitted an affidavit of Melanie Eggleston stating, I told them this, then they would get through the hearsay. You've got double hearsay involved. Exactly. I'm with you. So because of that. There's a glaring hole in the case, the failure or the absence of a Melanie Eggleston. Absolutely. Absolutely. They cannot get behind that. And because of that, they cannot get to the exception to allow for this to be raised for the first time on appeal. Beyond that, we're looking at the court's application of the facts and the case law that existed. You went beyond just what the restatement asserted. But look at the case law that was out there and how the case was interpreted. And there was a common thread of the case law, a common thread of what the courts looked at when they were looking at the publication to an agent. They didn't leave it alone as just what's the publication to an agent. It looked at whether or not there was some aspect of the complaining party, the principal, doing something in some way to some act to look into, to investigate some matter. All the cases kind of go down that line. Whether it's, whether you get into the Brockman, which states, and I'll say different things, but the Brockman decision says that one who agrees to submit his conduct to investigation, knowing its results, will be republished, consents to that publication. And it's this common theme of kind of an invitation to it. And here they sent up persons to look into whether or not defamatory statements were made and to inquire of what the, to seek out statements. As I understand it, there is no question of fact about they were agents. Nobody's argued they weren't agents, correct? That's correct. And when the court's looking at the case law to determine whether or not there was something done to invite this. And again, the invitation doesn't have to be a blatant invitation to go out there and secure this. There doesn't have to be some subterfuge and tricking in a response. That's not what's required. It's just some act on the part of the principal. And here on page 14 of the supplemental experts record identifies one of the persons who went up there, who agreed to pose as a patient, specifically states that he went up there to see if there was going to be negative things stated about the Eaglestons. That's why he's being sent up there. And so they're inviting something. They expect a response from the Eaglestons. And because of that invitation, they don't, they have to fit within good faith exception. Without that, that public, that statement is not a publication because they've invited it implicitly. As a result of that, the court was correct in its application of the law to the restatement and how all the courts have applied it in that matter. And because of that, it should be affirmed. In addition to that, it should be affirmed in its decision to strike the hearsay, which goes into whether or not there's a good faith belief. Because of that, which is a piece of discretionary stand, because of that, we do request that this court affirm the trial court's dismissal. Thank you. Thank you. I'll give you 30 seconds, counsel. This will be my time. Thank you. The charge is gone. I just want to reaffirm to this court that I think it's a rapid trail to be looking at the unnamed patient as hearsay or double or triple hearsay. The only question is, even if it was a rumor, the only question is, was there a basis to send in investigators? And then with respect to the investigators, when you look at the record, you won't see any provocation. You'll see just a bland question. I mean, the one person says, geez, there's another doctor by Costco. It doesn't even mention Hagel's. And then just Dr. Clint jumps all over that. No affidavit from LA? No affidavit from LA. Why? Because it's unnecessary. The only thing we have to prove is that there's a retrospect. In retrospect, it'd make the record tighter. Thank you. Yes. But, you know, there's a real problem in getting at this entire thing because the unnamed patient becomes immune from any examination. But, you know, maybe the unnamed patient's name never even or the fact that it exists comes up at trial. Maybe it's enough for Dr. – maybe it is enough for Dr. Hagelstein to say, I heard through the grapevine. I heard through the community that I'm being defamed. I have to tell you, just speaking for myself, if we were to allow this case to go back and you were somehow to prevail based on this circumstantial evidence, meaning somebody must have said something and we know there was damage because of such and so, I doubt you have enough to sustain a verdict in your favor. A fair one. A fair one. Your Honor, there's a – one of the cases we cited, I think there was a – Yeah, one of the cases is fine. I'm talking about this case. I like our case because we have good people, Your Honor, that were defamed in their profession. Too bad you couldn't convince the unnamed patient to step forward. Well, we can't do that. We can't do that. Thank you. Thank you. Appreciate your argument. Thank you. Case 0735654, Hagelstein versus Glymph, is now submitted.
judges: Wallace, Trott, Smith